Good morning, Your Honors. Mark Alpert for Appellant, Surf and Sand. I would like to reserve approximately five minutes for rebuttal. One of the central questions in this case is whether, when the City of Capitola adopted its conversion ordinance to regulate the conversion of mobile home park to tenant ownership, that that was a mere pretext that what the City was really trying to do was prevent the City of Capitola from converting the park to resident ownership. No, it was trying to prevent your client. That's right. It was trying to prevent Surf and Sand from converting the park to resident ownership. Okay. And I would suggest it's probably not a shocking revelation to this panel that when a group of politicians adopt a piece of legislation, that the stated justification for the legislation may not track exactly to what the real motivation is behind the legislators who adopt that legislation. And I think it's not a stretch also to think that this panel probably is not enthusiastic at the prospect of Federal courts or State courts engaging in a process of trying to ascertain whether or not when local governments adopt such types of enactments that they're being straightforward and truthful in the reasons for adopting those laws. And yet, there is authority in the Supreme Court and the Ninth Circuit that allows, indeed requires, courts to look beyond the official justification for adopting legislation to determine whether or not there's – it's a pretext for some improper purpose. Well, like what? I mean, in your – yes, in other areas of the law, like religion, like the religion clauses. But in this area of the law, i.e., economic regulation taking substantive process, what's an example? Well, first of all, the concurring opinion in Kelo of Judge Justice Kennedy, it was dealing with the question of a private taking in that case. You'll remember Kelo was, was there a public use by condemning this property for development of an economic development, and his concurring opinion, Justice Kelo, he – and Justice Kennedy says essentially if there's a plausible accusation of favoritism to a private party made by the plaintiff that it is the role of the court then to take that seriously while adopting sort of a presumption that the government acted for legitimate purposes where you have a plausible case to make, then the court needs to take that seriously and consider it. Of course, in this case — The problem I'm having with this case is it seems to me that your real problem is with the two statutes, the – the rents control statute and the conversion statute that are long in the past and that you didn't challenge when they – when they were enacted, and that this statute is relatively benign. I mean, at least in terms of demonstrating what its impact is, I – you didn't do anything under it, so I can't tell whether it really has any impact at all. Well, Your Honor, the conversion ordinance isn't benign in its impact. I'm glad you raised that question. It is the equivalent of adopting a change of zoning. Before – before the city adopted the conversion ordinance, the process for seeking a conversion was quite simple. You simply file your processing application after you conduct your survey. After this conversion ordinance is adopted, you have an extremely expensive, time-consuming process that has to be followed. What's – what's expensive about it? I mean, what – I actually am not sure of the details. I know there's – you have to have a survey, and then you have to have more than half the people. And if, depending on the results of the survey, there might be a presumption in a further proceeding. What else is expensive? Well, before you even get to the survey, under this ordinance, you have to undertake an extensive analysis of the infrastructure of the mobile home park. You have to hire a professional engineer who is acceptable to the city. And my recollection is it has to be by agreement of the parties. You have to present this data of the – in fact, in our opening brief, we of this conversion ordinance. In essence, the way we summarize it, I would say it would take tens of thousands of dollars and – and untold months in order to actually process the closure or the conversion. Excuse me. But there's – there's actually a more concrete injury that happens as soon as the park is closed. Put yourself in the position of somebody who is an investor in real estate. If you're an investor in real estate and you look at a piece of property for, in this case, its highest and best use – I'm just trying to find the page reference for the court. Anyway, let me move on. In the brief, we do discuss the various provisions and the difficulties associated with them. But imagine you're a property owner or a potential property owner who wants to buy or invest in a piece of real estate. And in this context, you have a piece of property that's subject to rent control that, as you point out, is very confiscatory and has been in place for a long time. I didn't plan to point that out, but go ahead. Right. Well, and it's been challenged. It's been challenged. Challenged and unsuccessful. And the challenges have been unsuccessful. Yeah. So if you're someone who's looking for your strategy to recover the underlying value of this property, your strategy is to convert this property to resident property. The enactments we're trying to get to. Right. Because the rent control ordinance had established rents that were 15 percent of fair market according to our allegations. You have a value that's consistent with that. So the adoption of this conversion ordinance, it does establish a procedure which allows you to convert it. But the fact that it creates these barriers and establishes this presumption that the conversion is not bona fide without resident support, immediately on passage is like a cloud on title to this property. In other words, if you're, as an investor, looking to buy a property for the purposes of trying to subdivide it, immediately after this conversion ordinance was adopted, there was a road to hoe because of the provisions of this conversion ordinance. So I would suggest that the injury occurred immediately when the conversion ordinance was adopted. Now, getting back to the case law, again, Kelo, in the context of a private taking, the Court says you look, you treat allegations of a pretext seriously. That's one example. I think another case was, I believe it was Lucas, which was a takings case, which, excuse me. I remember Lucas 4, I think the quote was a reference to stupid staff. And in Lucas, the Court said essentially if a governing body would only have its actions reviewed based on whether or not it had official harm-preventing or rational justifications in it, the takings standard in effect becomes a stupid staff test. Unless your staff is stupid enough to not come up with a good justification, you have no review. More recently, the Ninth Circuit in the Lazy Y Ranch. Well, let me take a step back to Kelo, because in Kelo it's important to note that Justice Kennedy, in language in that decision, suggested a similar kind of review would be appropriate for a substantive due process kind of consideration or an equal protection type consideration. So you have a Supreme Court suggesting the same thing would apply outside the context of a private taking. The Ninth Circuit very recently in the Lazy Y Ranch case said that a plaintiff could state an equal protection claim. In that case, the issue was the plaintiff had made the high bid for a grazing permit through the entity, and the local government had said, well, no, we're not going to give you this grazing permit, and had adopted some official justifications for it related to the administrative costs of an out-of-State party undertaking this grazing permit. And again, the Ninth Circuit said the property owner had argued that that was just a pretext, in effect, that really they were discriminating against this property owner for other improper purposes, and that it was improper for the district court to dismiss that case. So we have several Supreme Court and Ninth Circuit authorities for the proposition that under the right set of circumstances, the court must look beyond the official justification to determine if there is a pretext. And admittedly, in the pretext, there is some improper purpose that's used. Kagan. Kagan. Is there some animus toward your client that you're using? Under OLEC, that equal protection case, I think you can make the argument that that is exactly. Are you asking me if factually speaking? Yes, factually. Is that what you're alleging? Sure. What? The animus. Other than that it owns a trailer park. The animus is based on the politics, the underlying politics of the situation. The City of Capitola is attempting to protect the very low rent control rents of these residents. Right. That was the same with rent control, and we went through all those challenges. That's right, Your Honor. That's the you can make the same argument about the application of rent control. It is an equal protection type issue. Right. They were made. But that's right. But we're talking about a slightly different case than a generally applicable rent control ordinance. And that gets to what I think it really is the nub of this case. The question that really I think would bother me or I'd be concerned about if I was on the panel is, well, how do you know when it's proper for a court to simply accept the justifications of the local government, and when is it proper for? To go back, is the justification issue related, relevant to anything but the private taking? I mean, what you have so far is a concurring opinion by one Supreme Court justice. But is it – but it's still even that just pertains to the private taking issue. Is that right? Actually, that's not correct. There's language in that same opinion in Kelo in which Justice Kennedy refers specifically to equal protection and substantive due process cases. The Lazy Y Ranch case is a case which applies in the equal protection context. And, of course, equal protection and substantive due process are very similar in terms of the level of scrutiny that's applied to the decision. Right. And I understand that it might apply to equal protection if you had some sort of invidious or particularized bias. Right. But you don't have. I'm sorry. That was my question. That was my question. Well – Is there any particularized bias here? I think the issue is there is a particular – this is what Olic really addresses. It doesn't have to be based on a particular class or discrimination. You can have a class of one. And that's really what this is. And if you look at the circumstances under which this law was adopted, class of one applies very directly, because when the city adopted its conversion ordinance, it was adopting it to try to stop my client from converting the park. It was directed specifically at it. And that gets to a more fundamental point of why I think, regardless of what questions a court may have about whether or not it's appropriate to have scrutiny of the stated intentions, under some circumstances, this is a case which cries out for it. And there are three – Is this the only trailer park in the city capital? There is – in our complaint, we allege there is one other park that has not already been converted to tenant ownership. So there is one other potential mobile home park that could be subject to this regulation. The same bias exists, I presume, against that owner also. Actually, Your Honor, that's to be determined. What we know from the facts of this case is that the actions of the city were directed almost – were directed specifically to – in a response to an effort of Surf and Sand to convert the property. And that's part of the – Because they were trying to max – to charge people for rent. Surf and Sand had initiated a conversion process, and it held a meeting with the residents of the park to initiate a conversion process. At that meeting, several city council members attended and publicly spoke up against conversion. Within a week of that meeting, the city had adopted its conversion ordinance. And the central purpose of that conversion ordinance was – the claim is that it was to assure that the conversion is bona fide. And what is a bona fide conversion? It's a conversion in which the park owner truly intends to sell all the lots, is not planning to just sell one lot in order to get out of rent control. To get out from under and get the rent for all the others. Okay. I think we understand, and you have used your time. Oh, thank you. You're in the red. Thank you. Thank you. May it please the Court, I'm Henry Heter, representing the City of Capitola. I think the basic problem with the challenge to the ordinance in this case is that the nature of this ordinance is such that it's not really amenable to a facial challenge. And that's because this ordinance has no direct financial impact of any kind or any other kind on the park until such time as the park applies to convert the park to resident ownership. And once the park owner does apply to convert the park to resident ownership, there's a hearing process and a decision. It's become an as-applied claim at that point, which is informed by the administrative  Well, there, I don't know that there's much in this problem about the presumption and all that. But what about the fact that it does appear that it's going to be relatively exciting? I've now read the ordinance carefully, and there does seem to be substantial expenditures in terms of putting together disclosures for the renters. So there's at least, I don't know, they say tens of thousands. I don't know how much money, but. Your Honor, there is rhetoric in the case to that effect. I'm not concerned about the rhetoric. I have read the ordinance. I understand. I think here's the point. All zoning affects the value of property, and it's still constitutional. I'm not talking about zoning. I'm talking about the requirement. I understand, Your Honor. This, these requirements, every time a city approves a subdivision map, it imposes all things like that, fire protection, you name it. And these are costs associated with the development of the property and a new use of the property. And those are expenses, and a property owner has to weigh those incurred inspections against what the value of the property is going to be once the subdivision is complete. Now, there are limits to that. I mean. You may be absolutely right that this is just fine, but the question is really at what point do you get to challenge that? Well, I think you get to challenge that once you incur the expenses and it's known what the expenses are. If the expenses are unreasonable, if the city imposes unreasonable fees and other expenses on the applicant that aren't related to the subdivision, and there's law that says you can't do that as a city, you can challenge the imposition of those fees. And if the fees are so high as to prohibitively prevent the economic, the proposed economic use of the property, I guess you could make a takings allegation at that point. However, if your existing use of the property gives you a fair return, which in this case it does, I don't think your claim would be a taking claim. It would be some other type of claim, but still you would have a claim if a city or other public entity imposed unreasonable fees or other expenses on a change of use of property, because that's against the law. And a claim that you could assert prior to actually spending the money? I'm sorry, Your Honor? A complaint or a claim that you could assert prior to actually spending the money. That, I think, would run into Article III rightness problems, because you don't have a concrete dispute. Well, that's not concrete. They're saying, if I want to do X, I'm going to have to spend a lot of money. And I want to do X, but I don't want to spend the money. Why isn't that concrete? Well, we don't know how much money it's going to cost to do it, and we don't know whether that amounts to anything. All right. Suppose they fleshed it out, which they haven't. Suppose they went and they got an estimate from an engineer about how much it was going to cost to do this. That would be fine, Your Honor. And if they want to go through the process and claim that's an unreasonable fee, I don't see how that comes up. I don't see how that implicates any kind of takings claim. In other words, I'm a farmer, and I've got a farm, and it's zoned agricultural. And my property would be worth a lot. Okay. Then they'll lose. But I want to know whether they can bring the claim. They can challenge, if the fees and other conditions imposed on the change of use of property are unreasonable, they can challenge it under State law. And the State courts have struck down fees and other impositions. I'm just involved in a case involving the City of Thousand Oaks where they had a conversion ordinance which applied certain types of fire protection requirements. And the Superior Court judge says, well, under the Mobile Home Residency Act and under the Mobile Home Parts Act, you're preempted by State law from imposing those extra conditions. But I suppose they could argue that these are so onerous that it deprives them of all the economic use of the land if they could make that showing and thus argue a taking by virtue of this. Well, Your Honor, I don't think they could. They haven't done that. No, Your Honor, they can't, because they have an existing use of property which provides them a fair return. The fact that you want to do something else with your property that could give you more money, and there's nothing evil about that. The fact that you want to get out from under rent control, there's nothing evil or bad about that. To get more money, and the fact that you can't do that doesn't mean a taking has occurred. No, I was trying to help you out. I'm sorry, Your Honor. Well, I was thinking about a farmer who would like to build a hotel on his property because his property is worth more than a hotel on it, and his plan is zoned agricultural. Well, yeah, he could make a lot more money if he put a hotel on that property, but he doesn't have a right to change the zoning to commercial. That's my only point, Your Honor. His concerns about what costs or conditions may be imposed on a future subdivision of the park may be legitimate concerns depending on what conditions are actually imposed, but I don't see how they could arise to the status of a facial taking that presents a concrete Article III right dispute before this Court. It's just that the private taking claim or the equal protection claim, which doesn't depend on the availability of... I understand, Your Honor, of Williamson ripeness. Correct, Your Honor. I would say that, first of all, with respect to the equal protection claim, first of all, you look at the face of the ordinance. I would say that the city did enact the ordinance. I would not dispute in response to this... But that's not a ripeness issue. Are you claiming that nothing is ripe or only the takings clause isn't ripe? Your Honor, I think that there is a — it's clear to me that the takings claims are not ripe because of Article III. Okay. All right. What about the rest of them? I think that the Ninth Circuit has had opinions on either side of ripeness, whether it applies to equal protection and substantive process. I discussed in my brief the distinction that I seem to be able to divine from them is that if your substantive process and equal protection claims are intertwined in the same factual milieu as the takings claim, that they're also barred. And that's what I read from all those cases, because there are cases that go each way. And the nub of this claim against this ordinance is it somehow transfers value of the park owner to the park residents, and that's the taking. I think each of the claims, the takings claims, the substantive due process claims, and the equal protection claims all devolve around the same factual nexus. Do you understand any of these ripeness issues to be Article III as opposed to prudential? Yes, Your Honor. What about the recent Guggenheim case in our court? Your Honor, that case says that if you take — if you look at Williamson, it has two prongs. One, you have to have an application or a final action on an application. And number two, you have to be denied compensation by the State. And I believed — I believe that the Ninth Circuit in that case held that the second prong is prudential. But the first prong is Article III, and it's not prudential. But the consequence — Are you saying there's no final action here because they haven't made an application and been denied? Is that what you're saying? Correct, Your Honor, that the ordinance has no impact on the park owner until at such times it does make an application. It's the kind of ordinance that has no effect on you unless you make an application and any claim you thereafter have is necessarily an as-applied claim. It's just the nature of the ordinance. And also the — But the opinion also goes on to say that you can have a facial challenge under Penn Central, which I don't know whether — so why isn't this a valid version of that? I'm sorry, Your Honor? The Guggenheim opinion also goes on to say that you can have a facial challenge under Penn Central for a regulatory's taking. It does, Your Honor. But it still has to be right. The only distinction, the only new law that this Guggenheim decision — But a facial challenge by definition doesn't involve an application and a denial, no? It doesn't, Your Honor. But it also doesn't — you do have to meet the second prong of Williamson. And even though that's prudential, all the Guggenheim decision says is that because it's prudential, you can waive it, and in that case it's waived. All right. But why does Guggenheim say that's the first prong if it also says you're going to have a facial challenge? In other words, is the regulation itself the final determination? No, Your Honor. I mean, how can an ordinance that has general applications — there's two publicly owned parks in the city of Capitola right now, and this is the first park that's applied for conversion, at which point the city became concerned that it might be a sham conversion and enacted this ordinance. There was a prior park that converted, but it was a private park owned by the residents, so there was no danger of a sham conversion because it was exempt from rent control. As to whether or not this is a legitimate public purpose, and that drives the private taking and the equal protection and substantive process claims, the State's the one that imposed the tenant survey requirement, and the State's the one that imposed it for the very purpose in its purpose statement of determining whether or not a conversion is bona fide. All the city did was take this how are we supposed to use the tenant survey and establish some sort of reasonable guideline for its use in making that determination. And that's all that happened. On its face, it doesn't veto any conversion. It doesn't give the tenants an absolute right of veto. There's no way you can say it financially makes it prohibitive to convert a park. I mean, this is not an ordinance that's very egregious or excessive in any manner or any scope. Let's go back to Guggenheim, okay, because this is all somewhat new to me. Guggenheim doesn't seem to distinguish between the two prongs of Williamson. It says the Court has explicitly held that the Williamson requirements are merely prudential requirements. It doesn't seem to say that – and then, as I say, it does go on to entertain a facial challenge under Penn Central. So where are you getting the notion that there is some Article III requirement that requires that you first go and get a final order rather than challenge the regulation on its face? Your Honor, it's there, and I'm – unfortunately. What I have, it's printed off of Lexis. So the only pagination I have is 13-828. And it starts – it looks like it's a head note 4. The opinion goes, quote, second, because Williamson exhaustion is prudential only, comma, the requirement be waived or forfeited, period, close quote. So it's looking at the – Okay. I say that. So go ahead. So it's looking at that one prong of Williamson saying that your failure to seek State compensation is the prudential prong and it can be waived, and it found it was waived. But in this case, ripeness was raised on the motion to dismiss, and it was the basis for the Court's original order dismissing the case. I suggest the second order is less detailed, but I think it adopts the prior order. But that isn't what I was asking you. And it really helps if you listen to the question. All right? I apologize, Your Honor. The question is whether – you had originally told me that there was an Article 3 prong of this. Yes, Your Honor. And that the Article 3 prong is that he first needs a final order and that the regulation itself can't be it. Yes, Your Honor. All right. Now, where are you getting that from? When Guggenheim, it seems to me, goes on to entertain a facial challenge, meaning a challenge to the regulation on its face. Is that not what it does? Your Honor, but it's a rent control regulation, so it immediately has arguably a financial impact on the park because it's regulating the current use of the park as it operates, as an ongoing park. This isn't – it's not addressing an ordinance which says that we're going to regulate you if you choose to do something else with your property, and it only kicks in if you do choose to do that something else. The rent control ordinance in Guggenheim regulated the ongoing operation of the park, and I think that's the fundamental distinction. All right. So you're saying that a regulation can be sufficiently final in and of itself, but this one isn't? They can be, but they're very rare, Your Honor. And the decisions – in terms of taking, you have to have a regulation that takes virtually all value of the property. There is something I want to bring to the Court's attention because it may affect its decision. I don't know. But there is a bill that is awaiting Governor Schwarzenegger's signature, and I understand that he's reluctant to sign things right now. It's Assembly Bill 566, but what it does is it's an amendment to the Subdivision Map Act that's at issue in this case, which requires the resident survey. And in it, it clarifies the reason why it was amended, and it states, in deciding whether to approve, conditionally approve, or disapprove a map pursuant to this section, the legislative body or advisory agency may additionally consider in that hearing whether the survey required by Subdivision D demonstrates that the majority of the residents support the conversion. So if this becomes law, it does clarify that this indeed is the public purpose, that the city is using the resident survey properly, and if there's a takings claim that accrues, it's going to be a takings claim against the State. Now, I don't know if it will be signed or not. What would be the effect of that? I think it would move the takings claim in this case, Your Honor. Well, but their claim, as I say, I'm not really that concerned about the part about the survey, and it's the part about having to do a fairly elaborate set of disclosures before the survey, and I don't understand whether this affects that or not. That does not affect any other requirements the city may be imposing on a subdivision, including infrastructure. But you're saying this is just like any other subdivision? In terms of what the city might require them to do, there's nothing remarkable about the ordinance at all. And if so, suppose it was just some subdivision. Suppose they thought that the requirements were unreasonable. Now, I understand you probably win on the grounds they're not unreasonable, but the question is how do you challenge that? How do you challenge that? Could somebody come in and say, these – I want to subdivide my property, and these provisions, the requirements I have to go through to subdivide my property are substantive due process or equal protection or whatever, and without having to go through a State inverse condemnation claim? I don't think that you can bring – unless there was an ordinance, for example, you know, the provision of a city may say, well, you're on septic, you're going to have to hook up to city sewer. I'm sorry, what? A city may say, for example, you're on septic right now, you're going to have to hook up to city sewer. That's very expensive. And I think that in a situation where a public agency imposes a fee, a set fee for doing something, then that that ordinance, the dispute under that ordinance can be pretty concrete on enactment of the ordinance. Where a city says, tell us what you want to do with your property, we'll listen to – at a hearing we'll determine what's reasonable to have you do and what's reasonable not have you do and see how much it's going to cost to do it. I suppose what they had done here was they had made an actual application to convert or to subdivide, and they had accompanied it with an estimate from an engineer that to comply with the requirements would cost $100,000 hypothetically and said, and we're not going to do that because we regard that as an equal protection substitute process, something or else. Then could they come in and file a lawsuit? I don't think it would be ripe at that point, Your Honor. If the city – unless the ordinance – You think it would be ripe or not? No, it wouldn't be ripe, Your Honor. Because all ordinances, most ordinances are drafted to allow a lot of flexibility in terms of the applicant comes in. The city may have a dream list of what it wants to do. It may turn out that dream list is unreasonable or unrealistic, and the city may have to back off a lot of those conditions after it hears the evidence from the property owner, and it may impose different conditions. It may act in totally different ways. You don't know. So just to speculate that the city is going to require you to do – the city acts on their facially noncompliant application. I'm sorry, Your Honor. I think that the nature of this particular ordinance is it's unknown what its financial impact is going to be until an application is made and acted on. Okay. Thank you. Does anybody have time? We'll give you 30 seconds, since your adversary went over. With 30 seconds, I guess the one thing I do have time to address is the first prong of Williamson County. If you look at, for example, the Ventura mobile home communities case, the Court says pretty clearly that the final decision prong or first prong of Williamson County does not apply to a facial challenge, because you're challenging the ordinance on its face, not how it's applied. Thank you. Thank you. The case just argued is submitted for decision.
judges: Strom, Schroeder, Berzon